1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney

2

3  HALLIE HOFFMAN (CABN 210020)
   Chief, Criminal Division

4  KIMBERLY HOPKINS (MABN 668608)
   Assistant United States Attorney

5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
7       FAX: (415) 436-7234
        Kimberly.hopkins@usdoj.gov

8
   Attorneys for United States of America
9
                  UNITED STATES DISTRICT COURT
10
                NORTHERN DISTRICT OF CALIFORNIA
11
                        OAKLAND DIVISION
12

13 UNITED STATES OF AMERICA,            )  CASE NO. CR 19-00643-JST (SK)
                                        )
14         Plaintiff,                   )  GOVERNMENT'S OPPOSITION TO
                                        )  DEFENDANT'S MOTION FOR RELEASE FROM
15    v.                                )  CUSTODY [Dkt. 30]
                                        )
16 ROSS ANTHONY FARCA,                  )  Hearing: April 2, 2020
                                        )  Time: 10:00 a.m.
17         Defendant.                   )  Court: Hon. Sallie Kim
   _____)

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The Court should deny defendant Ross Farca's renewed motion for bail pursuant to the Bail Reform Act. The Court has already found by clear and convincing evidence that Farca is a danger to the community and ordered Farca detained pursuant to 18 U.S.C. § 3142.  To persuade the Court to release him, Farca must show changed circumstances that make him no longer a danger to the community.  18 U.S.C. § 3142(f).  He cannot for three reasons.  First, although COVID-19 is a circumstance that is far different from when the Court detained Farca, nothing about the COVID-19 pandemic bears on the Court's conclusions regarding Farca's risk of danger to the community.  Second, although Farca's father now may be willing to serve as custodian and surety (with a minimal unsecured bond) that difference also does render Farca safe to release to the community, because the Court has already found that the father is not suitable as a custodian.  Third, neither Covid-19 nor the amount of time Farca will serve in pre-trial detention is relevant to the danger he poses to the community.

**LEGAL STANDARD**

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence.  18 U.S.C. § 3142(f)(2)(B).  A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Motamedi*, 767 F.2d at 1406.

The Court must consider four factors in determining whether the pretrial detention standard is met:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).  "[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible.  *Id.*  Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored.  *Id.*

Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).

Under 18 U.S.C. § 3142(i), a judicial order may "permit the temporary release" of a defendant "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  The government bears the ultimate burden of persuasion to detain pretrial.  *Hir*, 517 F.3d at 1087.  However, once a defendant is ordered detained, it is the defendant who must show that temporary release is necessary under Section 3142(i).  *United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011).

**BACKGROUND**

**I.    OFFENSE CONDUCT AND CRIMINAL CHARGES**

On November 19, 2019, the United States filed a criminal Complaint against the defendant, charging him with False Statements to a Government Agency, in violation of 18 U.S.C. § 1001(a)(2). On December 3, 2019, a federal Grand Jury returned a one-count indictment against the defendant, charging the same.  The facts underlying the charge are summarized as follows.  On June 22, 2017, the Farca went to the U.S. Army Recruitment Center in Mountain View, California, and filled out an online background check application to join the Army.  The form explicitly states that all questions on the application must be answered completely and truthfully and notes the penalties for inaccurate or false statements.  Farca marked on the form that he understood the instructions and penalties for inaccurate or

false statements.  When asked about information regarding his psychological and emotional health, Farca falsely certified on the application that in the last seven years he had not consulted with a health care professional regarding an emotional or mental health condition.  Farca knew his statement was false as he had been in regular contact with a psychiatrist since 2011.  In fact, on at least three occasions between May 2014 and November 2015, Farca requested a letter of clearance from his psychiatrist to join the United States military.  The psychiatrist refused to provide a letter of clearance because she did not feel he was mentally stable to serve in the military.

Farca was accepted into the Army, and on August 28, 2017, reported to Fort Benning, Georgia, for basic training.  Shortly thereafter, Farca was arrested for assaulting a fellow army trainee.  The Army admitted Farca to a psychiatric unit for approximately 12 days for a mental health evaluation.  On October 3, 2017, Farca was discharged from the Army.  The discharge paperwork cited "failed medical / physical / procurement standards" and noted, "erroneous enlistment; medical condition disqualifying for military service, with no medical waiver approved."

## II.   DETENTION PROCEEDINGS

On November 26, 2019, the Honorable Sallie Kim ordered Farca detained pursuant to 18 U.S.C. § 3142.  As noted on the record and in the written Order, the Court found no condition or combination of conditions in section 3142(c) would reasonably assure the safety of any person or the community. The Court also found by clear and convincing evidence that Farca poses a danger to the community.

The Court specifically found the defendant made violent anti-Semitic statements online and demonstrated that he was inspired by recent domestic terrorists in the United States and abroad.  The Court reasoned that his previous possession of a semi-automatic rifle and 13 rifle magazines demonstrated that he had the ability to carry out the threats that he posted online. The Court also found concerning the defendant's conduct while on pretrial release on his state case.  Specifically, the defendant was communicating with a potential mass shooter on an encrypted email application to evade detection from law enforcement while he was on bond in his state court proceeding.  The Court

1   concluded that these factors, among others adduced at the hearing, clearly and convincingly

2   demonstrated that if released the defendant would be a danger to the community.

3       The Court also concluded the defendant's parents, although dedicated and caring, were not

4   suitable custodians under the circumstances and that no conditions could be fashioned to prevent the

5   danger to the community.

6                                   **ARGUMENT**

7   **I.      FARCA REMAINS A DANGER TO THE COMMUNITY**

8       **A.      The Pandemic Does Not Mitigate Farca's Risk to the Community**

9       The defendant argues that the risk that he will contract COVID-19 presents changed

10  circumstances now warranting his release.  As the Court found at the detention hearing, the defendant is

11  danger to the community and is not amenable to community supervision.  As other magistrate judges of

12  this Court have found,[1] the COVID-19 pandemic does not meaningfully shift the balance of the

13  § 3142(g) factors in defendant's favor.

14      Nothing about the COVID-19 pandemic reduces Farca's danger to others.  Danger to the

15  community is not limited to physical violence.  It can take different forms.  *See, e.g.*, *United States v.*

16  *Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass

17  pecuniary or economic harm."); *United States v. Harris*, No. 18-20343, 2018 WL 3239624, at *3 (E.D.

18  Mich. July 3, 2018) ("Defendant also allegedly has obstructed justice by attempting to destroy evidence

19  while in jail, which suggests that she would take other illegal actions if released."); S. Rep. No. 98-225

20  at 12-13 (Senate Judiciary Committee report on Bail Reform Act, stating, among other things, that the

21

22

23          [1]  In a written order, United States Magistrate Judge Susan van Keulen rejected a motion for
    release premised on the emergence of COVID-19, concluding that the existence and spread of COVID-
24  19 did nothing to undermine the Court's previous findings regarding risk of flight and danger to the
    community.  *United States v. Trujillo*, No. 20-cr-00028-EJD-1 (SVK), Dkt. 15 (N.D. Cal.); *see also*,
25  *e.g.*, *United States v. Sanchez*, No. 19-CR-00576-VC (JSC), Dkt. 23 (N.D. Cal.) (oral order denying bail
    motion premised on COVID-19 concerns); *United States v. Traore*, No. 20-CR-029-VC (JSC), Dkt. 28
26  (N.D. Cal.) (same); *United States v. Campos*, No. 19-CR-0280-RS (JSC), Dkt. 95 (N.D. Cal.) (same);
    *but see In the Matter of the Extradition of Alejandro Toledo Manrique*, No. 19-mj-71055-MAG-1
27  (TSH), Dkt. 115 (granting motion for release premised on COVID-19 concern in extradition proceeding,
    with different standards for release than under the Bail Reform Act, where defendant was more than 70
28  years old).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM
CUSTODY

1  Committee "intends that the concern about safety be given a broader construction than merely danger of

2  harm involving physical violence.").

3       Farca presents the same danger to the community as he did at the time of the Court's prior ruling.

4  Moreover, given the widespread community transmission of COVID-19 throughout the world, there is

5  no evidence that Farca would have a lesser risk of contracting the virus if he were released from pretrial

6  custody.  Indeed, it is likely that the risk of infection to himself, his father, and others in the community

7  might very well increase if released from custody.[2]

8       **B.      Farca's Father as a Custodian and Surety Does Not Mitigate Farca's Danger to the
             Community**

9

10      Farca has proposed living in Woodland, California, with his father.  At the time the Court

11  detained Farca, it found that the parents were not suitable, even though the father did not present himself

12  as a custodian or surety.  The government has serious concerns regarding defendant's father's suitability

13  to serve as a custodian, and the defendant's proposed conditions of release both in terms of their

14  adequacy and the capacity for certain conditions to be fully vetted at this time.

15      For example, at the time of the detention hearing, Farca's father told federal agents that he works

16  nights and weekends; Farca's computer records reflect that most of his dangerous online activity occurs

17  late at night and in the early morning hours.  His father also told agents that as a result, he could not

18  ensure that Farca will abide by the court ordered release conditions.[3]  Moreover, the minimal and

19  unsecured bond underscores that this is not a changed circumstance that will mitigate Farca's danger.

20  Indeed, the record is not sufficiently developed to show if the father will be able to be a suitable

21  custodian because that was never fully assessed by Pretrial Services or the Court.

22      The father's willingness to serve as a custodian, although well intentioned, does not change his

23  suitability.  It is unclear if Farca's father is currently working.  If he is currently working but is sheltered

24

25  [2] It is also relevant that Contra Costa County Superior Court Judge Theresa Canepa, issued a no bail
26  warrant for Farca on December 9, 2019 (Dkt. No. 01-190284-0).  If the Court releases Farca from
    federal custody, he will immediately be transported into state custody, possibly further increasing the
    risk of infection. The defendant's state case is currently trailing his federal case.

27  [3] The FBI memorialized the conversation with Tibi Farca in a FBI 302 report, and the government
28  previously disclosed the report to defense counsel. (Bates No. RF-001029)

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM
CUSTODY

5

in place, it is unclear who will provide the restrictions and structure at night and in the early morning hours that Farca needs once his father returns to work.  Relatedly, it is unclear what level of moral suasion the father has over Farca given that their relationship and his previous calls to law enforcement did not deter Farca from any of the criminal conduct he has engaged in.  Further, it is unclear whether pre-trial services will have the same ability to monitor Farca, such as through electronic monitoring or home visits, which increases the danger he would pose to the community upon release.  The government understands from pre-trial, for instance, that it is trying to conduct modified home contact through a video call and having a defendant show pre-trial around their residence.  In these circumstances, such a modified measure would be wholly inadequate.

Moreover, the defendant's belief that conditions including mental health counseling, cognitive behavioral treatment, and attending a day program such as ERBC will mitigate the court's concern for danger to others is misguided.  If released, it is doubtful that the defendant will be able to meaningfully participate in any of these necessary programs until self-isolation and shelter in place orders have been lifted.

## II.   FARCA HAS NOT SHOWN THAT HE IS ENTITLED TO RELEASE UNDER 18 U.S.C. § 3142(i)

Farca is likewise ineligible for release under 18 U.S.C. § 3142(i).  Farca's motion demonstrates he seeks an *indefinite*, rather than "temporary," release from custody.  He also fails to show that there is a compelling reason –individualized to Defendant—warranting temporary release.

### A.   Farca seeks an indefinite, rather than temporary, release

Farca does not specify an end-date to the release that he seeks.  Since Section 3142(i) only authorizes temporary release, he does not qualify for release under this provision.

### B.   COVID-19 is not a compelling reason for release

Unquestionably, the COVID-19 pandemic is a public health emergency.  But, Farca has not demonstrated that these circumstances apply to him in a manner that warrants release.  *See Diaz-Hernandez*, 943 F.3d at 1199 (forbidding "categorical grant of bail" based on immigration detainer, and requiring individualized evaluation).  Farca has not shown that he is at high risk to become severely ill if

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

1 he contracts COVID-19, or that his facility is unequipped to provide appropriate medical treatment if he
2 does get sick.  Indeed, it should not be taken as certain that Farca's risk of contracting COVID-19 while
3 in custody is significantly higher than if he were to be released.  Farca has not therefore shown that
4 release is necessary for the compelling reason of protecting his life.

5 **1.     Farca is not particularly vulnerable to COVID-19**

6         Courts have generally recognized that "it is a rare case in which health conditions present an
7 'exceptional reason'" to allow for release where detention would otherwise be warranted.  *See, e.g.*,
8 *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) (collecting cases).  And Farca does not
9 argue that he is at higher risk of getting very sick or dying from COVID-19 based on advanced age or an
10 underlying health condition such as heart disease, diabetes, or lung disease.  *See* http:
11 https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html.  Despite the
12 severity of the COVID-19 pandemic, Farca's case is not one of those rare cases.  Anecdotally, many
13 infected with COVID-19 may be asymptomatic, or experience it as a cold or flu.  Farca relies on the
14 mere possibility that he will become infected with COVID-19 by someone else at the facility, because of
15 his refusal or inability to follow the guidelines set by the Center for Disease Control regarding
16 handwashing and hygiene.  Farca has not demonstrated that he is at high risk to become severely ill from
17 COVID-19, that his risk of contracting COVID-19 while in custody is significantly higher than if he
18 were to be released, or that the facility is unequipped to provide appropriate medical treatment if he were
19 to become sick.  Farca has not therefore shown that temporary release is necessary for the compelling
20 reason of protecting his life.

21 **2.     Farca's facility is equipped to provide appropriate medical care**

22         Currently, Farca does not claim to be infected with COVID-19 and he makes no claim that he
23 was denied necessary medical treatment or care for exposure to COVID-19 or for any other medical
24 condition.  Nor can Farca establish that should he contract COVID-19 while in custody, the facility
25 would be unable to administer constitutionally acceptable treatment.  *Cf. United States v. Kidder*, 869
26 F.2d 1328, 1330–31 (9th Cir. 1989) (to prevail on Eighth Amendment claim regarding avoiding prison
27 due to medical condition, defendant "must show that *no* constitutionally acceptable treatment can be
28

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM
CUSTODY
7

1  provided while he is imprisoned" and collecting cases).

2          **3.      Farca has not shown that his risk of contracting COVID-19
3                    would necessarily be significantly lower if released**

4          Social distancing and other recommended public health practices are impractical in an

5  institutional setting.  But Farca's facility has taken significant measures to curb the spread of COVID-

6  19.  Coupled with the uncertainties surrounding Farca's release, this Court should not accept as

7  necessarily true Farca's contention that his risk of contracting COVID-19 is substantially higher while in

8  custody than on release.

9          Santa Rita Jail, the facility in which Farca resides, strictly controls outsiders' access, and has

10  taken significant measures to avoid the spread of COVID-19.  Even before COVID-19, Santa Rita Jail

11  had protocols in place to combat the spread of infectious diseases, which are known to be risks wherever

12  large groups of people gather.  In particular, Santa Rita Jail has existing significant quarantine and

13  isolation protocols for infectious disease outbreaks.  Santa Rita Jail has also implemented and planned

14  for special measures to combat COVID-19.

15          Santa Rita staff has informed the government that they have already shared with the Court the

16  jail's specific precautionary measures taken in response to COVID-19.  The government has received an

17  80-page manual detailing Santa Rita Jail's Master Outbreak Control Plan, which contains affirmative

18  screening and quarantine policies and procedures, organizational responsibility charts, emergency

19  staffing plans, emergency feeding plans, and other emergency protocols to address outbreaks of

20  infectious diseases at the jail.  Half of this 80-page manual is specifically dedicated to management of a

21  potential COVID-19 outbreak and the jail's process for identifying suspected COVID-19 cases and

22  securing adequate treatment and care for sick inmates.  This includes:

23          • Interim Infection Prevention and Control Recommendations for Patients with Confirmed
24              Coronavirus Disease 2019 (COVID-19) or Persons Under Investigation for COVID-19 in
25              Healthcare Settings issued by the CDC;

26          • Staff, employees, and outside contractors will have their temperature measured before
27              entering the facility and will be sent home if their temperature is over 100 degrees;

28

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM
CUSTODY

- Signage all over the facility reminds inmates and employees about basic hygiene and social distancing measures;
- Clinical Flowcharts to assist in identifying and assessing a person's exposure to COVID-19;
- Risk Stratification strategies for persons with COVID-19 contacts;
- Rapid Triage and housing guidance for confirmed COVID-19 cases (which specifically takes into account preexisting medical conditions that increase risk factors);
- Policies for management of jail inmates or staff potentially exposed to COVID-19;
- COVID-19 recommendations from the California Dental Association; and
- COVID-19 Testing instructions.

Santa Rita jail screens all new arrestees prior to intake and makes regular checks of the prisoner population for symptoms of infection. The jail has also regulated contact visits with persons outside the jail as a precautionary measure in accordance with social distancing guidance from federal, state, and local authorities. As such, the risk that Farca himself will be infected simply because of detention is likely low and manageable.

Taken together, these measures should sharply mitigate the risks of COVID-19 transmission Farca purportedly fears. Given that the jail has restricted contact visits with persons outside the jail as a precautionary measure in accordance with social distancing guidance from federal, state, and local authorities, Farca cannot establish that his continued detention substantially elevates his risk of infection above the general population's current risk.

Moreover, though Farca references generic arguments about prison populations being more at risk for illnesses in general, there is no evidence that Farca's custodial situation puts him at a meaningfully higher risk of contracting COVID-19 than if he were released into the general population. Given the publicly reported community spread of COVID-19, it is not unlikely that Farca will be exposed to COVID-19 through community transmission over the coming months regardless of his custodial status. https://www.sfchronicle.com/health/article/Newsom-56-of-Californians-could-get-coronavirus-15144438.php.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

1    There is ample evidence of widespread COVID-19 transmission and clustering outside of the

2    jail.  Many much smaller institutions or entities in the United States (including nursing homes and senior

3    centers, places of worship, TSA, cruise ships, Congress, and the NBA) have seen much greater numbers

4    of confirmed COVID-19 cases, often in clusters, than Santa Rita Jail has to this point.  Moreover, Farca

5    has not indicated that post-release conditions would secure his overall well-being better than remaining

6    in custody.

7    **III.    FARCA'S GUIDELINE RANGE IS NOT A BASIS FOR PRE-TRIAL RELEASE**

8    Farca argues that he should be released because his advisory guideline range is low, and that at

9    some point, prolonged pre-trial detention may become excessive and consequently punitive.  Farca's

10   argument is speculative and should be rejected by the Court. It also does not change the danger he poses.

11   In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court upheld the Bail Reform Act

12   against a facial due process challenge, holding that pretrial detention permitted under the Act constitutes

13   a permissible regulation of liberty rather than impermissible punishment. *Id*. at 747; *See also United*

14   *States v. Flores*, 2018 WL 3530837 at *2 (C.D. Cal. 2018).  However, the Court noted it was expressing

15   "no view as to the point at which detention in a particular case might become excessively prolonged, and

16   therefore punitive, in relation to Congress' regulatory goal." *Id*.  The Ninth Circuit in *United States v.*

17   *Gelfuso*, 838 F.2d 358 (9th Cir. 1988) stated that there is no bright-line rule to determine at "what point

18   pretrial detention might be excessively prolonged," but rather the determination "requires assessment on

19   a case-by-case basis." *Id*.

20   District Courts in this Circuit have focused on three factors in determining whether prolonged

21   pretrial detention violates the due process rights a of a criminal defendant: "(1) the nonspeculative

22   length of expected confinement; (2) the extent to which the government (the prosecution and/or the

23   court system) bears responsibility for pretrial delay; and (3) the strength of the evidence indicating a risk

24   of flight, a threat to the trial process, and/or a danger to the community." *Flores*, 2018 WL 3530837 at

25   *2; *United States v. Mukhtar*, No. 2:12-cr-00004-MMD-GWF, 2012 WL 12953440, at *9 (D. Nev. July

26   17, 2012) (*quoting United States v. Ailemen*, 165 F.R.D. 571, 581 (N.D. Cal. 1996)).  While the

27   defendant's motion highlights the first factor, all three factors are instructive.

28   GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM
     CUSTODY

1    First, the argument that Farca's expected length of confinement may be excessively prolonged is

2    premature.  Farca is charged with False Statements to a Government Agency, a crime that carries a

3    statutory maximum prison term of five years.  Farca has been in custody for four months.  While the

4    parties disagree on the calculation of the advisory guideline range, it is in the discretion of the District

5    Court Judge to impose a sentence, whether it be above, within, or below the guideline range.

6    Second, the government bears little responsibility in any perceived pre-trial delay.  The

7    continuing COVID-19 pandemic is causing everyone, including medical professionals, law enforcement,

8    the judicial system, and everyday citizens, to adjust their lives to minimize and contain the spread of the

9    disease.  Given the unusual and complex health crisis, the effect of any pretrial delay on the defendant is

10   minimal.

11   Lastly, the evidence demonstrates and Court has already found that Farca is a danger to the

12   community.  Farca made violent anti-Semitic statements online and his possession of a semi-automatic

13   rifle and 13 rifle magazines demonstrated that he had the ability to carry out the threats that he posted.

14   Farca communicated with a potential mass shooter on an encrypted email application to evade detection

15   from law enforcement while he was on bond in his state court proceeding.  While Farca does not have

16   any criminal convictions, he has numerous contacts with law enforcement and people have filed police

17   reports regarding his threatening conduct.

18   Therefore, the Court should reject Farca's argument for pre-trial release based on his advisory

19   guideline range.

20                                               **CONCLUSION**

21   For the reasons stated above, the government opposes the defendant's motion for release and

22   requests that the Court order the defendant remain detained pending trial.

23   DATED:  April 1, 2020                              Respectfully submitted,

24                                                    DAVID L. ANDERSON
25                                                    United States Attorney

26                                                    _____
                                                        /s/
27                                                    KIMBERLY HOPKINS
                                                     Assistant United States Attorney

28
GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM
CUSTODY
                                                11