DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KIMBERLY HOPKINS (MABN 668608)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Kimberly.hopkins@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19-00643-JST |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Hearing: May 28, 2020 |
| ROSS ANTHONY FARCA, | Time: 12:45 p.m. |
| Defendant. | Court: Hon. Jon S. Tigar |

UNITED STATES' SENTENCING MEMORANDUM

The United States of America requests that defendant Ross Farca be sentenced to 12 months imprisonment, three years supervised release, $92,768 in restitution, and a $100 special assessment.

## INTRODUCTION

On November 19, 2019, the United States filed a criminal Complaint against the defendant, charging him with False Statements to a Government Agency, in violation of 18 U.S.C. § 1001(a)(2). On December 3, 2019, a federal Grand Jury returned a one-count indictment against the defendant, charging the same. On April 9, 2020, the defendant pled guilty to the Indictment, without a plea agreement. The United States agrees with the Guidelines calculations set forth in the presentence investigation report ("PSR"). However, based on the nature and circumstances of the crime, the defendant's history and characteristics, and the goals of sentencing, the government believes a sentence of 12 months – the high-end of the applicable guideline range – is necessary and appropriate in this case.

## DISCUSSION

### I.  The Offense Conduct

On June 22, 2017, Farca went to the U.S. Army Recruitment Center in Mountain View, California, and filled out an online background check application to join the Army. The form explicitly states that all questions on the application must be answered completely and truthfully and notes the penalties for inaccurate or false statements. Farca marked on the form that he understood the instructions and penalties for inaccurate or false statements. When asked about information regarding his psychological and emotional health, Farca falsely certified on the application that in the last seven years he had not consulted with a health care professional regarding an emotional or mental health condition. Farca knew his statement was false as he had been in regular contact with a psychiatrist since 2011. In fact, on at least three occasions between May 2014 and November 2015, Farca requested a letter of clearance from his psychiatrist to join the United States military. The psychiatrist refused to provide a letter of clearance because she did not feel Farca was mentally stable to serve in the military.

Farca was accepted into the Army, and on August 28, 2017, reported to Fort Benning, Georgia, for basic training. Shortly thereafter, Farca was arrested for assaulting a fellow army trainee. Witnesses reported that prior to the assault the defendant had made terrorist threats and displayed aggressive behavior. He threatened to "kill everyone in the barracks" and said he "can't wait to get small

explosives." The Army admitted Farca to a psychiatric unit for approximately 12 days for a mental health evaluation. On October 3, 2017, Farca was discharged from the Army. The discharge paperwork cited "failed medical / physical / procurement standards" and noted, "erroneous enlistment; medical condition disqualifying for military service, with no medical waiver approved."

## II.     The Guidelines Calculations

The Government agrees with the Guideline calculations set forth in the presentence investigation report:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2B1.1(a)(2): | | 6 |
| b. | Specific offense characteristics under U.S.S.G. § 2B1.1(b)(D) (Amount of loss to the U.S. Army – more than $40,000) | | +6 |
| c. | Acceptance of Responsibility | | -2 |
| d. | Adjusted Offense Level | | 10 |

The government anticipates that the defendant will object to the 6-level increase for loss amount to the Army, and will argue that only a 4-level increase applies. However, there is evidence in the record from the Army establishing a total loss amount of $92,768 to the Government because of the defendant's criminal conduct. Specifically, the Army explained:

> "The estimated cost to the U.S. Army for recruiting and training a student for the course that Mr. Farca attended in FY17 was $55,300. The title of this training is One Station Unit Training (OSUT), which combines Basic Combat Training and Military Occupational Specialty (MOS) Training. When Mr. Farca accessed onto active duty, OSUT training was 16 weeks in length, which is ~112 days. This equates to $493 per day. Mr. Farca was on active duty 36 days, at a cost of $17,832. The remaining 76 days is an un-recoupable financial loss to the Government, at a cost of $37,468. In addition, it also cost the Army an additional $55,300 to find another recruit to replace Mr. Farca. Accordingly, the total financial loss to the Government is $92,768."

*See* Victim Impact Statement, U.S. Army.[1] For purposes of sentencing, the Court need not make its loss calculation with absolute precision; rather, it need only make a reasonable estimate of the loss based on the available information. U.S.S.G § 2B1.1, cmt. N. 3(C); *see also United States v. Zolp*, 479 F.3d 715,719 (9th Cir. 2007). Here, the record adequately supports a loss amount of $92,768.

---

[1] The Probation Officer advised that he would submit the U.S. Army's Victim Impact Statement to the Court.

UNITED STATES' SENTENCING MEMORANDUM

2

### III. The Defendant's History and Characteristics

The defendant's history and characteristics likewise support a 12-month term of imprisonment.

#### A. Prior Contacts with Law Enforcement

While the defendant does not have any prior criminal convictions, his criminal history reveals numerous contacts with law enforcement that are concerning.

For example, in April of 2011, Concord Police Department ("CPD") officers arrested the defendant for obstructing and resisting a police officer. In that case, the defendant's mother called 911, and yelled, "Police! Don't take," and the line then disconnected. Officers responded to the residence and saw that the defendant's mother was visibly shaken and upset. The police tried to talk to defendant, but he did not comply, and then resisted arrest, which led to a scuffle with police. It took three officers to subdue and arrest him. Officers transported the defendant to the hospital for medical treatment and a mental health evaluation.

In February of 2012, the vice principal at the defendant's high school called the Walnut Creek Police Department regarding her concern over the defendant's unauthorized use of a school computer. The vice principal noted the defendant had accessed websites regarding sniper rifles and terrorist organizations. When she searched his backpack, she found a book regarding Saddam Hussein and a notebook with possible white nationalist drawings. She told the police that she thought the defendant was an intelligent child, but was concerned that he might be obsessed with terrorists and topics of that nature because of the material he was reading. The police subsequently responded to the scene and determined that no crime occurred.

A few months later in April of 2012, the defendant's own father filed an informational report with the CPD. His father reported that the defendant suffers from autism and developed a recent violent history. He noted that the defendant is infatuated with military action in Iran, Iraq, and Libya, and said he needs to be in shape to fight the police and was going to be prepared for his next confrontation with the police.

Lastly, in 2015, the defendant's case manager at the Regional Center of the East Bay contacted the CPD and reported that the defendant's father expressed concerns because the defendant was not taking his medication. The case manager told CPD that she believed the defendant fits the profile of

UNITED STATES' SENTENCING MEMORANDUM
3

someone that would do a school shooting. She noted that she did not think there was an immediate danger, but thought that a welfare check was in order.

The government raises these incidents to show a pattern of dangerousness that had been forming prior to the defendant's criminal conduct in the present case. Indeed, the defendant's motivation to join the military appears fueled by his anti-Semitic beliefs and his obsession with violence. A review of the defendant's computer revealed copies of saved Facebook chats from 2015, where the defendant discusses his intent to get military training.[2] The defendant wrote:

> ". . . . I WILL take VIOLENT action against the ZOG once I have military training and preferably some military combat experience to ensure I am steadied under fire. . . .My problem is, I can't initiate that process immediately for some specific personal reasons. . . ."

A "ZOG" is a white supremacist acronym for "Zionist Occupied Government," which reflects a common white supremacist belief that the United States government is controlled by people of Jewish ancestry. When the defendant mentions he inability to initiate the process for getting military combat experience, he is likely referring his psychiatrist's refusal to provide him a letter of clearance to join the military on three separate occasions between May 2014 and November 2015. His psychiatrist's refusal to provide a letter of clearance did not deter the defendant from applying to the military. Moreover, upon his discharge from the Army, it appears the defendant's dangerous behavior continued to escalate.

### B. The Defendant's Pending State Case

In June 2019, the defendant made violent anti-Semitic statements online that he was inspired by recent domestic terrorists in the United States and abroad. The defendant described people of Jewish ancestry as subhuman and described, in detail, that he planned to commit mass murder against them. For example, he mentioned currently owning an AR15 semi-automatic rifle. He also discussed John Earnest, an individual who committed a mass shooting at a synagogue in San Diego in April of 2019, "What do you think of me doing what John Earnest tried to do, but with a Nazi Uniform, and unregistered and illegally converted machine gun and actually livestreaming with Nazi music?"

---

[2] The defendant's computer was seized by CPD during the search of his residence in June of 2019. According to computer records, the defendant created a Microsoft Word document in September of 2015, and copied some of his Facebook chat logs to the document. The file containing the Word document was last accessed in January of 2016.

UNITED STATES' SENTENCING MEMORANDUM
4

In fact, the CPD learned that the defendant had the ability to carry out the threats that he posted online, as a search of the defendant's residence resulted in the seizure of a semi-automatic rifle and 13 rifle magazines. CPD also seized assorted ammunition, spent casings, paper gun targets, white nationalist and Nazi indicia, and military discharge paperwork giving rise the federal charge in this case.

Also concerning, was the defendant's conduct while on bond in his state case. For example, the defendant was communicating with a potential mass shooter on an encrypted email application to evade detection from law enforcement. The defendant also applied for a job that would have allowed him to be armed and to receive firearms training.[3] Lastly, during his transport by the FBI to federal court, the defendant asked FBI agents numerous and pointed questions about the training procedure for the FBI. The defendant was curious about the type of guns the agents carried, including the caliber of the gun, optics, grip handles, magazine type (20 or 30 rounds), and length of rifles. The defendant also asked about the plates in their body armor.

### C. Statements by Community Members

Members of the Jewish community are closely following this case and the defendant's pending state case. The defendant's violent rhetoric online, and his apparent ability to carry out the threats he posted online has placed the Jewish community on heightened alert. While members of the Jewish community are not official victims in the defendant's federal criminal case, they felt it was important to let the court know how the defendant has affected the Jewish community. Four members of the Jewish community have submitted statements thus far. *See* Exhibits 1 through 4, filed separately under seal. The PSR also provides a detailed summary of the statements in paragraphs 37 and 38 of the "Pending Arrests" section. Accordingly, the government respectfully requests that the Court consider statements from the Jewish community members under 18 U.S.C. § 3553(a).

## IV. Victim Impact and Restitution

The United States Army is the official victim in this case. On May 20, 2020, the government received the Army's Victim Impact Statement, claiming a total loss amount of $92,768, because of the

---

[3] In October of 2019, the defendant applied to the Bureau of Security and Investigative Services ("BSIS"), a state agency that regulates, licenses, and enforces California's private security guard industry.

UNITED STATES' SENTENCING MEMORANDUM
5

defendant's criminal conduct.  The record adequately supports a loss amount of $92,768.

**V.     Sentencing Recommendation**

The government recommends a sentence of 12 months custody.  In arriving at its requested sentence, the government considered each of the Section 3553(a) factors, the PSR, and the facts underlying the defendant's conviction.

The defendant lied about his mental health history on a background application to join the Army. Because all Army officers are required to have a national-security clearance, the application procedures for the Army (and other military branches) require applicants to respond truthfully to all questions. This case illustrates as well as any the importance of that requirement.  Had Farca been truthful, the Army would have known that he had been receiving mental health treatment since 2011, was prescribed various medications for his mental health conditions, and on at least three occasions, had requested a letter of clearance from his psychiatrist to join the military, and was denied each time.  Moreover, the Army would have had the basic information necessary to determine that Farca should not, under any circumstances, be granted a security clearance or receive the kinds of weapons training provided by the military.

A significant sentence in this case will meet the goals of both general and specific deterrence. As to specific deterrence, the government is hopeful—though of course it cannot be sure—that serving time in federal prison will deter the defendant from future crimes and will assist him in making the sustained choice to comply.

A significant sentence also will have a general deterrence effect by demonstrating the serious consequences that follow lying to the military, law enforcement, or other executive-branch divisions to gain access to military training, military weapons, or a national-security position.

Therefore, the United States respectfully submits that a sentence of 12 months of imprisonment, together with the maximum available term of supervised release, is appropriate and warranted in this case. Such a sentence would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

/ / /

/ / /

# CONCLUSION

For all of the foregoing reasons, the Government respectfully recommends a sentence of 12-months of imprisonment, three years supervised release, $92,768 in restitution, and a $100 special assessment.

DATED: May 26, 2020                                        Respectfully submitted,

                                                        DAVID L. ANDERSON
                                                        United States Attorney

                                                              /s/
                                                        KIMBERLY HOPKINS
                                                       Assistant United States Attorney